IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

OSCAR L. SHAW,                      §
TDCJ-CID # 646048,                  §
                                    §
            Plaintiff,              §
                                    §
v.                                  §      CIVIL ACTION NO. H-07-1719
                                    §
TDCJ-CID, et al.,                   §
                                    §
            Defendants.             §

## MEMORANDUM OPINION AND ORDER

Oscar L. Shaw, a physically handicapped inmate of the Texas
Department of Criminal Justice - Correctional Institutions Division
(TDCJ-CID), has filed a lawsuit under 42 U.S.C. § 1983, Title II
of the Americans with Disabilities Act (ADA), Section 504 of the
Rehabilitation Act (RA), and Section 101.021 of the Texas Tort
Claims Act (TTCA) against TDCJ-CID officials along with the
University of Texas Medical Branch (UTMB) and the TDCJ-CID.
Defendants Dr. Abbas Khoshdel, Tim Morgan, and Nathaniel Quarterman
have filed a Motion for Summary Judgment (Docket Entry No. 29) and
have submitted evidence in support of their motion.  Having
reviewed the pleadings and evidence, the court has determined that
the motion should be granted.

## I. Allegations and Claims

Shaw, who asserts that he is legally blind, alleges that he
slipped and fell in the showers at the TDCJ-CID Estelle Unit on

February 21, 2007.  He realized that he hurt his hand at the time of the accident but did not know the extent of the injury.  Shaw submitted a sick call request that evening and was seen the next morning by Dr. Abbas Koshdel, a physician assigned to the Estelle Unit.  After examining Shaw's hand and X-rays, Dr. Koshdel determined that the hand was broken and phoned the infirmary for pain medication and a brace.  He also scheduled Shaw for an appointment at the TDCJ-CID Hospital in Galveston.

On March 12, 2007, Shaw was taken to Galveston where an Orthopedic surgeon examined him  and a second series of X-rays were ordered.  The surgeon told Shaw that an operation was necessary because his fractured hand needed pins and a plate due to the delay in bringing him to the hospital.  The surgeon then put Shaw's hand in a splint and assured him that the operation would occur the next morning.  However, no operation took place and Shaw never saw the surgeon again.  Three days later Shaw was returned to the Estelle Unit without an explanation.

On March 17, 2007, Shaw filed a sick call request and a Step 1 Grievance because no one at the medical department had seen him. He was then returned to Galveston on March 21, 2007, where he was scheduled for surgery on the following day.  However, there was no operation.  This time a nurse told Shaw that there had been an emergency in the operating room and that he would have to be rescheduled.  Later, a new doctor came to Shaw's hospital room,

-2-

looked at his hand, and told Shaw that, although his hand appeared to be somewhat crooked, he did not need surgery.  Shaw claims that the doctor did not examine the X-rays and apparently had not consulted with the prior surgeon.  Shaw alleges that his fractured bone has become disfigured and that he has suffered from pain, headaches, and sleeplessness due to the delay in treatment.

Shaw contends that TDCJ-CID Director Nathaniel Quarterman and Warden Tim Morgan violated the ADA and RA because, although they were aware of the unsafe conditions of the handicapped showers, they ignored the hazards the showers posed to inmates. Specifically, Shaw contends that the showers needed nonslip flooring due to the increased likelihood of handicapped inmates slipping and falling.  He alleges that Quarterman and Morgan had the authority to install the flooring and their failure to do so resulted in Shaw's accident and broken hand.  Shaw further complains that Estelle Unit's hallway, cell block, and dining hall floors are also slippery and should be surfaced with special grip material.  He also contends that doors in the hallway open outwards and do not have any warning devices to warn inmates that they are opened.  Shaw complains that handicapped inmates are mixed with assaultive, non-handicapped, inmates and that correctional officers lack training on how to handle handicapped inmates.  In addition to the claims under the ADA and RA, Shaw also contends that Quarterman and Morgan violated his rights under the Fifth, Eight, and

-3-

Fourteenth Amendments of the Constitution and that the defective conditions of the showers constituted a violation of the TTCA.

Shaw contends that Dr. Khoshdel was deliberately indifferent to his serious medical needs by failing to provide reasonable necessary medical care for his broken hand. He asserts that Khoshdel caused him to wait nineteen days before sending him to Galveston for treatment. Shaw also states that the other unnamed doctors were deliberately indifferent by improperly applying a splint to his hand and by failing to operate on his hand in a timely manner. Shaw further contends that UTMB and TDCJ-CID implemented policies to deny medical treatment in order to cut costs. He claims that the policies have resulted in inmates like himself being subjected to deliberate indifference by prison officials and health care workers.

Shaw seeks $ 100,000.00 from Dr. Koshdel for his alleged violations under the TTCA and an additional $ 3,000,000.00 for the alleged constitutional violations. He also seeks similar damages from the unnamed doctors and UTMB. Shaw further requests injunctive relief to remedy the unsafe conditions and an order for him to be seen and treated by a hand specialist.

## II. __Summary of Defendants' Arguments and Evidence__

The defendants argue that they may not be sued for damages pursuant to the ADA and the RA. They further contend that they are

-4-

entitled to Eleventh Amendment Immunity from claims against them in their official capacities and they raise the defense of qualified immunity with regard to the claims against them in their individual capacities.  They further argue that they are entitled to summary judgment regarding Shaw's deliberate indifference claim and that Shaw has failed to state a claim with regard to the ADA, the RA, the TTCA, and 42 U.S.C. § 1983.

In support of their arguments, the defendants present the following evidence attached to their motion (Docket Entry No. 29):

> Exhibit A:    Relevant Portions of Shaw's grievance records from January 2007 to June 2007 with business records affidavit
>
> Exhibit B:    Relevant Portions of Shaw's UTMB and TDCJ-CID medical records
>
> Exhibit C:    Affidavit of Dr. Michael Kelly
>
> Exhibit D:    Affidavit of Dr. Ronald Lindsey with curriculum vitae

The defendants contend that Shaw has failed to allege a violation of the ADA or the RA because he has not made any claim that he was denied an opportunity to participate in a prison program because of his disability.  Specifically, the defendants point out that Shaw does not allege that he was denied use of the showers, only that the floors were slippery.  They point out that Shaw's grievances do not indicate that he was prevented from using the showers or that he was otherwise barred from using a program or service in the prison system.  .  <u>See</u> Exhibit A, at 17 - Step 1

Grievance # 2007031131 (general complaint concerning conditions, but no denial of access). They further contend that they cannot be held individually liable for the shower area accident under the ADA or the RA. The defendants agree that Shaw is legally blind and that he slipped and fell while in the shower at the Estelle Unit. See Exhibit D. They point out that he waited until that evening to submit a sick call request. Dr. Koshdel saw him the next morning and X-rays were ordered in a timely fashion. After examining Shaw, Dr. Koshdel diagnosed the injury as a spiral fracture of the second metacarpal in Shaw's left hand with minimal displacement. Exhibit D, at 1. Dr. Koshdel prescribed pain medication, a brace, and an ace bandage. He then referred Shaw to the UTMB Galveston Hospital where Shaw was examined and treated on March 12, and March 22, 2007.

Shaw's hand was not operated on because the X-rays indicated the bone fracture would heal properly without surgery. Id. Instead, Shaw was fitted with a custom made splint, and the doctors monitored the bone's alignment with follow-up X-rays . It was the doctors' opinion that surgery would only be required if there was an increase in fracture angulation, shortening or malrotation. X-rays made later indicated that the fracture was healing correctly. Although Shaw complained of stiffness, the unit physician prescribed stretching exercises to restore motion. Id. He was also given more pain medication and scheduled for a return

to Galveston in April, 2007.  Exhibit B, at 028.  The doctor examining Shaw noted that there was no evidence of a deformity and that the fracture had healed.  Exhibit B, at 3.

Shaw was referred to an occupational therapist who scheduled him for treatment three times a week from May 25, 2007, until July 11, 2006.  Exhibit B, at 37-53.  Among the treatments given were paraffin baths, kinetic exercises with a hand-gripper, therapeutic exercises with thera-putty, and other functional activities.  See e.g. Exhibit B, at 38.  Shaw appeared to improve during the sessions.  Id.  The defendants contend that the records show that Shaw's treatment needs were met and that there was no indication that Dr. Koshdel or any other defendant was deliberately indifferent to his health.

### III. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue.  Kee v. City of Rowlett, Tex., 247 F.3d 206, 210 (5th Cir. 2001).  To meet this burden, the movant must present evidence that shows that

-7-

the nonmovant cannot carry its burden of proof at trial.  <u>Smith v. Brenoettsy</u>, 158 F.3d 908, 911 (5th Cir. 1998).  The movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim.  <u>Stahl v. Novartis Pharmaceuticals Corp.</u>, 283 F.3d 254, 263 (5th Cir. 2002).  Once the movant has met this burden, the non-movant must present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant.  <u>Id</u>.

The court construes the evidence in favor of the non-moving party and does not weigh the evidence, assess its probative value, or resolve any factual disputes.  <u>Williams v. Time Warner Operation, Inc.</u>, 98 F.3d 179, 181 (5th Cir. 1996).  However, the non-movant cannot rely on "conclusory allegations" or "unsubstantiated assertions" to establish that there is a triable issue.  <u>Wallace v. Texas Tech University</u>, 80 F.3d 1042, 1047 (5th Cir. 1996).  Nor is the non-movant's burden satisfied by casting "some metaphysical doubt as to material facts" or where "only a scintilla of evidence" has been brought forth.  <u>Fiesel v. Cherry</u>, 294 F.3d 664, 667 (5th Cir. 2002); <u>Spectators' Communication Network Inc. v. Colonial Country Club</u>, 253 F.3d 215, 219 (5th Cir. 2001).  Factual controversies will be decided in the non-movant's favor only when both sides have presented evidence showing that there is an actual controversy.  <u>Burns v. Harris County Bail Bond Bd.</u>, 139 F.3d 513, 518 (5th Cir. 1998).

-8-

## IV. <u>Analysis</u>

A. <u>The Accident in the Shower</u>

Shaw asserts that his slip and fall accident is actionable under the ADA and the RA.  The rights and remedies available under the ADA are almost duplicative of those available under the RA.  <u>Bennett-Nelson v. La. Bd. of Regents</u>, 431 F.3d 448, 455 (5th Cir. 2005), <u>citing</u> <u>Pace v. Bogalusa City School Bd.</u>, 403 F.3d 272, 287-88 (5th Cir. 2005).  The ADA and the RA are comprehensive laws intended to provide disabled plaintiffs with accommodations at government agencies.  Shaw cannot seek monetary damages or injunctive relief from the named individual defendants in their personal capacities under either law.  <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1005 n.8 (9th Cir. 1999) ("Title II provides disabled individuals redress for discrimination by a 'public entity' <u>See</u> 42 U.S.C. § 12132."); <u>Montez v. Romer</u>, 32 F. Supp.2d 1235, 1240 (D. Colo. 1999).  <u>See</u> <u>also</u> <u>Lollar v. Baker</u>, 196 F.3d 604, 609-610 (5th Cir. 1999) (RA's comprehensive remedies barred section 1983 liability against individual defendants).

To assert an ADA claim, Shaw must allege that he has been discriminated against due to his disability.  42 U.S.C. § 12132; <u>Hall v. Thomas</u>, 190 F.3d 693 (5th Cir. 1999); <u>Bryant v. Madigan</u>, 84 F.3d 246, 249 (7th Cir. 1996).  The RA also requires a showing that the defendants discriminated against him and denied him a

benefit based on his disability.  See <u>Newberry v. East Texas State University</u>, 191 F.3d 276, 281 (5th Cir. 1998).  There is no indication that any official deprived Shaw of a benefit or the ability to participate in a program because he was blind.  Shaw has not shown that he was prevented from using the showers.  Instead, his complaint about the accident concerns what he perceives to be substandard conditions of the showers.

Shaw's complaint is essentially a slip and fall claim, which is not actionable against the prison or the prison officials.  See <u>Reynolds v. Powell</u>, 370 F.3d 1028 (10th Cir. 2004); <u>Walker v. Reed</u>, 104 F.3d 156 (8th Cir. 1997).  Prison condition claims are predicated upon a showing that custodial officials were aware of and deliberately ignored an excessive risk to an inmate's life or serious health need in violation of the Constitution's Eighth Amendment.  <u>Farmer v. Brennan</u>, 114 S.Ct. 1970, 1979 (1994); <u>Palmer v. Johnson</u>, 193 F.3d 346, 352 (5th Cir. 1999).  Only those deprivations denying the minimum civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  <u>Wilson v. Seiter</u>, 111 S.Ct. 2321, 2324 (1991); <u>Horton v. Cockrell</u>, 70 F.3d 397, 400-01 (5th Cir. 1995), <u>reh. denied</u> (1996).  At the most, Shaw's allegations indicate that the prison officials were negligent in failing to ensure that the showers were not slippery.  This is a problem in common to showers, in and out of prison, and is not actionable as a civil rights

claim.  See Reynolds, 370 F.3d at 1031, citing LeMaire v. Maass,
12 F.3d 1444, 1457 (9th Cir. 1993) (noting that "slippery prison
floors . . . do not state even an arguable claim for cruel and
unusual punishment").

Although Shaw may have been more vulnerable than most to
slipping on the wet shower surfaces, he has failed to assert facts
that would show that the defendants knowingly and unnecessarily
placed him in a dangerous environment to the extent that his
constitutional rights were violated.  Reynolds, 370 F.3d at 1031
(no deliberate indifference found even though inmate was on
crutches and had specifically warned officials he was at risk of
falling).  Therefore, Shaw has failed to show that he has been
denied a benefit or service due to his disability.  He has also
failed to show that he has been knowingly exposed to an unnecessary
danger.  The defendants are therefore entitled to dismissal
regarding Shaw's complaint about falling in the showers and other
perceived deficiencies in his cell area.  Shaw's claim for
injunctive relief regarding the conditions in the prison area will
be dismissed because he has failed to show that he was denied
access to a benefit or service.

    B. Medical Care

To assert a cognizable complaint of denial of adequate
medical care the plaintiff "must allege acts or omissions
sufficiently harmful to evidence deliberate indifference to

serious medical needs." Estelle v. Gamble, 97 S. Ct. 285, 292 (1976). The record shows that Shaw submitted a sick call request the evening after he was injured, and Dr. Koshdel examined him the next morning. After completing the examination, Dr. Koshdel prescribed pain medication and a brace. Shaw was later sent to the TDCJ-CID Galveston Hospital for further examination and was returned there on several occasions for further diagnosis. The record of extensive treatment demonstrates that neither Dr. Koshdel nor any other official or health care worker was deliberately indifferent to Shaw's serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). See also Mendoza v. Lynaugh, 989 F.2d 191, 193-95 (5th Cir. 1993). The issue of whether Shaw needed surgery points to a difference of opinion among doctors and does not support a claim of deliberate indifference since it is clear that Shaw's injury was not ignored at any stage. Stewart v. Murphy, 174 F.3d 530 (5th Cir. 1999). There are no guarantees that Shaw or any patient will receive flawless care, and it is clear that the attention given to Shaw was sufficient to meet constitutional standards. Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). The record is clear that Shaw was provided constitutionally adequate medical care and that all defendants, including the unnamed doctors at Galveston, are entitled to dismissal regardless of whether they have answered this suit. See Lewis v. Lynn, 236 F.3d 766, 768 (5th Cir. 2001). Moreover, Shaw

fails to assert a claim against the agencies or the individual defendants in their official capacities because he has not identified an official policy or accepted practice in either claim that clearly violated his rights.  See Grandstaff v. City of Borger, 767 F.2d 161, 169 (5th Cir. 1985).

C. Texas Tort Claims Act

Having determined that the asserted federal claims are subject to dismissal, this court shall also dismiss the supplemental state claims.  See Premiere Network Services, Inc. v. SBC Communications, Inc., 440 F.3d 683, 692 (5th Cir. 2006), citing Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.").  Therefore, plaintiff's state law claims will be dismissed for lack of jurisdiction.


V. **Plaintiff's Motions**

Shaw has filed motions (Docket Entry Nos. 14, 19, 27, 31, 32, and 33) in which he seeks to compel discovery from defendants.  The defendants previously asserted qualified immunity and filed a motion for a protective order in part pursuant to the defendants' entitlement to qualified immunity (Docket Entry No. 12), which this court granted.  The purpose of qualified immunity is to protect state officials from vexatious discovery.  See Schultea v. Wood,

-13-

47 F.3d 1427, 1436 (5th Cir. 1994).  The defendants have submitted relevant evidence and the court has determined that they did not violate Shaw's civil rights.  The motions will be denied.

Shaw has filed a motion for a preliminary injunction regarding the conditions of his confinement (Docket Entry No. 15), which the court will deny because the court has found no violation of Shaw's civil rights and has determined that he cannot prevail in this action.  See Planned Parenthood of Houston and Southeast Tex. v. Sanchez, 403 F.3d 324, 329 (5th Cir. 2005).  The court will deny Shaw's motions for entry of default (Docket Entry Nos. 21, 24 and 28) because he has no right to default judgment, even where some unserved defendants may have failed to file a response.  See Lewis, 236 F.3d at 768; Ganther v. Ingle, 75 F.3d 207, 212 (5th Cir. 1996), citing Mason v. Lister, 562 F.2d 343, 345 (5th Cir. 1977). The court shall deny Shaw's motion for leave to file a motion for summary judgment (Docket Entry No. 35) as futile because he has failed to assert that he has been denied a benefit or service on account of his disability and because it cannot be disputed that he has received medical care for his injury.  Rushing v. Kansas City Southern Ry. Co., 185 F.3d 496, 504 (5th Cir. 1999); Smith v. Brenoettsy, 158 F.3d at 911.

## VI. <u>Conclusion and Order</u>

The court **ORDERS** the following:

1.  The defendants' motion for summary judgment (Docket Entry No. 29) is **GRANTED**.

2.  The plaintiff's motions (Docket Entry Nos. 14, 15, 19, 21, 24, 27, 28, 29, 31, 32, and 33) are **DENIED**.

3.  Plaintiff's motion to withdraw instruments (Docket Entry No. 26) is **GRANTED**.  The clerk will make copies of the exhibits requested by plaintiff, which are attached to Docket Entry Nos. 3 and 27, for inclusion in the court's file and will return the original exhibits to plaintiff.

4.  Plaintiff's request for a copy of the docket sheet (Docket Entry No. 36) is **GRANTED**.  The clerk will provide plaintiff with a copy of the docket sheet.


**SIGNED** at Houston, Texas, on this 14th of February, 2008.

```
                                  SIM LAKE
                   UNITED STATES DISTRICT JUDGE
```